**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| J. Michael Plevyak, | : | Case No. 5:16-00158-MJC |
| | : | |
| Debtor. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| Solar Innovations, Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. 5:20-00088-MJC |
| | : | |
| J. Michael Plevyak, | : | |
| Robert P. Sheils, Jr., Chapter 7 Trustee, | : | |
| | : | |
| Defendants. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

# <u>O P I N I O N</u>

This adversary proceeding has an extensive history relating to the termination of an employer – employee relationship. Debtor, a former employee of Plaintiff with unique technical skills, resigned from his position with Plaintiff in 2011. However, prior to resigning, Debtor had embarked on a program of deleting his work product and other information from Plaintiff's computer system, conspiring with a competitor for a new job, and committing other acts in violation of his employment agreement and a confidentiality agreement. Based on this conduct, Plaintiff sued Debtor and obtained a judgment against him in the amount of $1,182,361.31 in State Court.

Plaintiff commenced this adversary action seeking to have the judgment declared non-dischargeable under 11 U.S.C. § 523 and to deny his discharge under 11 U.S.C. § 727. As set forth below, the Court will (i) sustain Plaintiff's objections to discharge under 11 U.S.C. §§

1

727(a)(2)(B), 727(a)(3), 727(a)(4) and 727(a)(5), (ii) overrule the objection to discharge under 11 U.S.C § 727(a)(2)(A), and (iii) deny Plaintiff's claim for a determination that the State Court judgment is non-dischargeable under 11 U.S.C. § 523(a)(6).

## I.  **JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016.  These matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (J).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

## II.  **PROCEDURAL HISTORY**[1]

### A.  **State Court Action**

On September 29, 2011, Solar Innovations, Inc. ("Plaintiff" or "Solar") initiated litigation against Debtor J. Michael Plevyak ("Debtor" or "Defendant") in the Court of Common Pleas of Schuylkill County, Pennsylvania (No. S-2072-11) ("State Court Action").  Thereafter, Solar filed a First Amended Complaint on November 9, 2011 and a Second Amended Complaint on July 3, 2013.  Adv. Dkt. # 25, Ex. C and D.  In the State Court Action, Solar asserted fourteen (14) counts including claims for Replevin, Breach of Contract, Conversion, Trespass to Chattels, violations of the Pennsylvania Uniform Trade Secrets Act, Theft of Trade Secrets, Breach of Fiduciary Duty, and Injunctive Relief.

---

[1]     Docket entries in the main bankruptcy case are noted as "Dkt." and docket entries from this Adversary Action shall be referred to as "Adv. Dkt."

Pursuant to Solar's request for a preliminary injunction, the State Court entered an Opinion and Order ("Injunction Order") dated May 11, 2012. Ex. SI-5.[2] In its Injunction Order, the State Court made extensive findings of fact and conclusions of law and ordered, inter alia, that the Debtor "abide by the non-compete provisions set forth in the Employee Confidentiality Agreement and is prohibited from working for Acurlite Structural Skylights, Inc. … for a period of two (2) years." Id. at 1. The Debtor was represented by legal counsel and defended the injunction proceeding.

On October 14, 2015, Solar filed a Motion for Summary Judgment in the State Court Action. See Ex SI-2. On March 8, 2016, the State Court entered judgment against Defendant/Debtor in the amount of $1,182,361.31 ("State Court Judgment"). Ex SI-1. The State Court Judgment was entered by default. Although Debtor was represented by counsel in the State Court Action during the injunction proceeding, Debtor did not oppose the Motion for Summary Judgment.[3]

## B. **Debtor's Three (3) Bankruptcy Cases and Plaintiff's Adversary Actions[4]**

On July 29, 2013, Defendant/Debtor filed a Voluntary Chapter 7 Bankruptcy Petition docketed at Case No. 13-03907 – his first of three bankruptcy cases.[5] The Court dismissed the

---

[2]    The Pennsylvania Superior Court affirmed the Injunction Order by a Memorandum and Order dated March 20, 2013. Adv. Dkt. # 25-7, Ex. F.

[3]    The record is not clear whether Debtor's State Court Counsel formally withdrew in the State Court Action or merely stopped defending Debtor.

[4]    The Court may take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries and the bankruptcy petitions, schedules, and statements of financial affairs filed in the Debtor's bankruptcy cases. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolini, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally Nantucket Investors II v. California Federal Bank (In re Indian Palms Assoc., Ltd.), 61 F.3d 197 (3d Cir. 1995).

[5]    Debtor has been represented by the same law firm throughout all three bankruptcy cases.

3

case by an Order dated September 20, 2013 for failure to file documents, including his Schedules, as required under the Code. Just prior to the dismissal, Solar had filed a Motion for Relief from the Automatic Stay in the main case and commenced an adversary action with the filing of a Complaint to Determine Dischargeability (A13-223). As a result of the main case dismissal, the related adversary proceeding was dismissed as well.

Debtor's second Chapter 7 case was filed on October 25, 2013 docketed at Case No. 13-05500.[6] On January 6, 2014, Solar filed a Motion to Confirm Termination or Absence of the Automatic Stay in the main case and commenced another adversary action by filing a Complaint to Determine Dischargeability (A 14-11). On August 19, 2014, Plaintiff filed a Motion to Dismiss Case for Abuse under 11 U.S.C. § 707(a) and § 707(b)(1). On November 5, 2014, the Court granted Plaintiff's Motion to Dismiss finding that the case was filed not in good faith. On April 8, 2015, the Court denied Debtor's Motion for Reconsideration of the dismissal order.

On January 18, 2016, Debtor filed his third bankruptcy case but this time under Chapter 13.[7] On September 2, 2020, after sustaining Solar's objections to the Debtor's Sixth Amended Plan without leave to file an amended plan, the Court converted the case to one under Chapter 7. Dkt. # 173. On December 24, 2020, Plaintiff filed another Motion to Dismiss Case for Abuse under 11 U.S.C. § 707(b) ("Motion to Dismiss Case for Abuse"), Dkt. # 190, and commenced this instant proceeding with the filing of a Complaint to Determine Dischargeability (A 20-88). These matters were consolidated for trial.

---

[6]    Debtor's Schedule I filed in his second case on November 27, 2013 (Docket # 12) indicates "$0.00" for monthly income and "Unable to Work Due to Injunction" and his filed Statement of Financial Affairs ("SOFA") indicates "$0.00" for income for 2013.

[7]    Debtor's Schedule I filed in this case on February 2, 2016, Dkt. # 14, shows "$0.00" monthly income and his SOFA indicates "$0.00" income for 2014 and 2015, Dkt. # 21.

4

Debtor filed a Motion to Dismiss the Adversary Complaint which the Court granted in part and denied in part by the Amended Order dated May 25, 2021, Adv. Dkt. # 22. On June 11, 2021, Plaintiff filed an Amended Complaint under 11 U.S.C. 523(a)(6), 727(a)(2), 727(a)(3), 727(a)(4) and 727(a)(5), which is the operative complaint in this matter.[8] Adv. Dkt. # 25. Debtor filed his Answer on July 14, 2021. Adv. Dkt. # 27. Trial was held on April 18, 2022.[9] Post-trial briefs and proposed findings of fact and conclusions of law have been timely submitted and this matter is ripe for decision.

## III. FINDINGS OF FACT[10]

Based upon the evidence presented at trial[11] and the extensive dockets in Debtor's three (3) Bankruptcy Cases, the Court makes the following findings of fact as required by Fed. R. Civ. P. 52, made applicable to this adversary action by Fed. R. Bankr. P. 7052.

### Debtor's Employment with Solar Innovations

1.      Plaintiff Solar is a Pennsylvania corporation that manufactures and designs extrusions that are used like an "erector set" for windows, doors, greenhouses, sunrooms and

---

[8]      Plaintiff's Amended Complaint also references § 1328 in the caption but that appears to be an error as any claim under § 1328 was determined to be inapplicable by the Court in its May 25, 2021 Order.

[9]      Prior to the start of the trial, Plaintiff withdrew the Motion to Dismiss Case for Abuse with consent.

[10]      The parties disagreed as to whether the findings in the State Court Action were preclusive in this adversary proceeding. Because the Court has not relied upon those findings, it does not reach the issue.

[11]      Three individuals testified at trial: Michael Conklin, a former Solar employee in its Information Technology department, Gregory Header, Solar's former owner, and J. Michael Plevyak, the Debtor.

skylights and glass panels would then be inserted into the extrusions.  April 18, 2022 Transcript at 21.[12]  Gregory Header was the owner and founder of Solar.[13]

2.      In April 2004, Solar hired Debtor as its Vice-President of Engineering, Research & Development.  Tr. at 23.  Debtor worked as a product design engineer in research and development for approximately 40 years.  Id. at 103.

3.      At the time of his employment with Solar, Debtor executed an Employee Confidentiality Agreement.  Ex. SI-6.

4.      Debtor worked approximately 20 hours per week, primarily from his home towards the end of his employment relationship with Solar.  Tr. at 23.

5.      Solar provided Debtor with a company laptop which had access to Solar's server. All information, including the technical research and development Debtor was working on, was to be kept on the laptop.  Id. at 24.

6.      Debtor had access to all of Solar's proprietary information as described by Mr. Header.  Id. at 22-25.[14]

7.      On May 26, 2011, Debtor went to Solar's facility and began packing property and materials into boxes, including property that was owned by Solar, for removal from the premises. Id. at 29-30.

---

[12]     References to the Transcript from the April 18, 2022 trial are noted as "Tr."  Adv. Dkt. # 41.

[13]     Mr. Header sold his ownership of Solar on January 31, 2022.

[14]     At trial, Debtor testified that he did not have access to Solar's proprietary information stating "[a]s far as I knew, there was nothing proprietary there. Everything that I saw there, I had been up and down and sideways for 20 years before I even got there. So, no, I didn't see anything proprietary when I worked there."  Tr. at 77.  However, Mr. Header testified at length regarding Solar's business and the steps it took to safeguard its proprietary information.  The Court credits Mr. Header's testimony and finds that the Debtor had access to Solar's proprietary information.

6

8.      After Mr. Header confronted him about these actions, Debtor resigned his employment by way of a letter of resignation, prepared in advance of his arrival at the facility.  Id. at 79.

9.      Prior to resigning his employment with Solar, Debtor established a relationship with one of Plaintiff's competitors, Acurlite Structural Skylights, Inc. ("Acurlite"), which included two (2) meetings with Ronald Palumbo, Acurlite's President, and its counsel, Frank Kepner.[15]  Id. at 84-85.

10.     Prior to resigning his employment with Solar, Mr. Palumbo provided Debtor with an Acurlite laptop and Debtor loaded all of the files from his Solar laptop to the Acurlite laptop. Id. at 82.

11.     Prior to resigning his employment with Solar, Debtor deleted large amounts of data from the Solar laptop and used a program to conceal his actions.  Id. at 8-15.

12.     Debtor maintained that he resigned from Solar because of his health issues and wanted to retire.[16]  Despite this stated intention and less than a week after his resignation from Solar, Debtor began working for Acurlite on June 1, 2011.  Id. at 82.

13.     Debtor received compensation from Acurlite of $32,307.80 in 2011 and $23,076.90 in 2012.  See Ex. SI-10.

14.     Subsequent to Debtor's resignation, Solar's IT department conducted an investigation and determined that Debtor had, for some period of time prior to his resignation, deleted electronically stored data from Solar's computer system, including a majority of the work undertaken by Debtor since his employment in 2004.  Tr. at 10.

---

[15]     Mr. Palumbo was a partner with Debtor in a prior business relationship.  Id. at 104.

[16]     The Debtor testified that he "had no intention of working after [he] left Solar.  I left Solar to pursue my bucket list and continue my retirement, that's why I left Solar."  Id. at 79-80.

7

15.     Debtor installed software designed to block the monitoring of his actions by Solar as well as to impair Solar's efforts to detect and restore deleted data.  Id. at 12.

**The State Court Action**

16.     On September 29, 2011, Solar filed suit against Debtor in the Court of Common Pleas of Schuylkill County, Pennsylvania, Civil Action No. S-2072-11 ("State Court Action").

17.     Pursuant to Solar's request for a preliminary injunction and after three days of evidentiary hearings, the State Court entered an Opinion and Order ("Injunction Order") on May 11, 2012, finding inter alia, that Debtor was subject to the non-compete provision as set forth in the Employee Confidentiality Agreement and enjoined Debtor from working for Acurlite, or any other competitor of Solar's located within 100 miles, in any capacity for a period of two years. See Ex. SI-5.

18.     The Pennsylvania Superior Court affirmed the State Court Injunction Order on March 20, 2013.  See Adv. Dkt. # 25-6, Ex. F.

19.     On October 14, 2015, Solar filed a Motion for Summary Judgment in the State Court Action and a Brief in Support of Motion for Summary Judgment.  Ex. SI-2, SI-3.

20.     On March 8, 2016, the State Court entered Judgment in favor of Solar and against the Debtor in the amount of $1,182,361.31 ("State Court Judgment").  Ex. SI-1.

21.     The State Court Judgment is comprised of five categories of damages, see Ex. SI-4:

| | | |
|---|---|---|
| I. | Wages and Benefits | $    57,290.37 |
| II | Compensation from Others | 71,472.20 |
| III. | Sabotage damages | 652,941.18 |
| IV. | Restoration Damages | 3,562.50 |
| V. | Litigation Costs | 397,095.06 |
| | Total | $1,182,361.31 |

## Debtor's Bankruptcy Cases

22.     On July 29, 2013, Debtor filed a Voluntary Chapter 7 Bankruptcy Petition in the Middle District of Pennsylvania at Case No. 13-03907.

23.     Debtor's first case was dismissed on September 20, 2013, pursuant to 11 U.S.C. § 521(i)(1) due to the Debtor's failure to file schedules, statements, and other required documents.

24.     Debtor then filed a second Voluntary Chapter 7 Bankruptcy Petition in the Middle District of Pennsylvania on October 25, 2013 at Case No. 13-05500.

25.     On August 19, 2014, Solar filed a Motion to Dismiss Case for Abuse under 11 U.S.C. § 707(b).

26.     On November 5, 2014, this Court entered an Order granting Plaintiff's Motion to Dismiss for Abuse under 11 U.S.C. § 707(b).

27.     On April 8, 2015, this Court denied Debtor's Motion for Reconsideration of this Court's Order granting the Plaintiff's Motion to Dismiss under 11 U.S.C. § 707(a).

28.     On January 18, 2016, Debtor filed a Chapter 13 Voluntary Petition (Case No. 16-00158-MJC), his third bankruptcy case in less than three years.

## Debtor's Omissions from the Schedules and SOFA and Misrepresentations

29.     Approximately two years after the filing of the current bankruptcy case, Debtor inherited $2,600.00 following the death of his step-father, which was not disclosed.  Tr. at 120.

30.     Debtor also obtained a magistrate's judgment on March 26, 2019 against an individual for $4,206.05, which was not disclosed.  Id. at 120; Ex. SI-25.

31.     In satisfaction of that judgment, Debtor was paid $4,543.40 on or about May 15, 2019, which was not disclosed.  See Ex. SI-25.

9

32.     Prior to his mother's death, Debtor received $25,000.00 from her in an effort to help him out of his financial difficulties.[17]  Tr. at 91.

33.     Debtor's Schedules in this case do not disclose the receipt of $25,000.00 in cash as a gift or loan from his mother.  See Dkt. # 14.

34.     During the course of this bankruptcy case from 2016-2018, Debtor deposited cash in the total amount of $15,150.00 into his bank account.  Tr. at 94-96, 100; Ex. SI-21.

35.     Debtor knew he had a continuing obligation to report income or other assets.[18]

---

[17]     Debtor testified that this cash was hidden in his mother's house and she instructed him where to find it.  Tr. at 91-92.

[18]     At trial, Debtor claimed that he was not aware that he was required to disclose these post-petition assets.  Tr. at 91-92 ("I -- absolutely, I did not know it was a requirement.").  Yet conversely, Debtor argued that he did, in fact, report these funds in his Chapter 13 Plan and Amended Plans filed in this case.  See Dkt. #s 22, 34, 42, 76, and 99.  However, the Plans indicate only that "Debtor shall pay into the Plan from personal loan from family (Debtor's mother)."

At the confirmation hearing on his Fourth Amended Plan, Debtor, under examination by Solar's Counsel, testified that he did not deposit the entire amount into his account at once "because of this whole process" – meaning his Bankruptcy case:

> Q.  So why didn't you deposit it all at once?
> A.  Because of this whole process, it just seemed I just put what I needed in there, and that's that.
> Q.  So you were trying to conceal the fact that you had this money, is that true?
> A.  No, just seems this process was just -- I just put in what I needed, that's what I wanted to do.
> Q.  When you say 'this process,' you mean the bankruptcy proceeding?
> A.  Yes.

Tr. at 93-96 (quoting from 7/10/18 Tr. at 59-60)).

The Court finds Debtor's testimony that he was not aware of his obligation to report income and assets not credible based on his actions of concealing the $25,000.00 cash and depositing only small amounts into his bank account when needed.

10

36.     Debtor misrepresented the source of funds that would be used to fund his proposed Chapter 13 plan.[19]

**Debtor's "Bucket List"**

37.     Starting sometime in 2012, Debtor embarked upon fulfilling what he dubbed his "Bucket List."[20]  Tr. at 114.

38.     Prior to filing his first bankruptcy case in 2013, Debtor withdrew cash from his bank account totaling approximately $250,000.00.  Tr. at 95; Ex. SI-20.  These cash withdrawals

---

[19]     Debtor's Fourth Amended Plan at Paragraph 2.A. states: "As Security for the same, Debtor's Mother shall pay said sum to Debtor's Counsel, pursuant to an Escrow Agreement with Trustee."  Dkt. # 99.  Debtor's mother was deceased as of sometime in 2016.  See Dkt. 111, 7/10/18 Tr. at 72.  The relevant part of that 2018 testimony is as follows:

> Q. Now over to the right under Paragraph 2A, the last sentence says, "As security for the same, debtor's mother shall pay said sum to debtor's counsel pursuant to an escrow agreement with Trustee." Do you see that sentence at the end 2 of Paragraph 2A?
> A. Right, yeah.
> Q. When you signed this paper in April of 2018, your mother had already been dead for two years, right?
> A. Yeah, when my mother –
> Q. So this statement simply isn't true, right? Your mother was not going to pay anything to anybody, right?
> A. Well, she gave me the money, and I was just -- that's what its purpose was.

Id. at 71-72.

[20]     Debtor claims that in 1993 he was diagnosed with advanced glaucoma and his doctors informed him that he would be blind in six years.  See Tr. at 114.  Debtor testified that in 2010, almost 20 years after this initial diagnosis, he was told by a doctor that if he was going to travel he should do it now and that is why he wanted to retire and check things off his bucket list.  Id.  Based on this diagnosis, Debtor decided to fulfill his so called "bucket list" while he was still able.

Despite his now almost 30 year old diagnosis, Debtor appeared at trial with no apparent significant vision problems and testified that he still drives, watches television, reads, and occasionally rides his motorcycle.  Id. at 129-30.  Debtor did not produce any medical records to support his medical condition.

11

included large lump sums of $120,000.00 on October 2, 2012 and $50,000.00 on March 27, 2013.[21] Ex. SI-20.

39.     Despite repeated requests by Solar, Debtor did not provide an accounting for the expenditure of these funds.[22]

40.     Throughout the State Court Action, Debtor was subject to contempt because of his inability to provide any receipts to substantiate the trips and other items on which Debtor claimed to have spent the funds.  Tr. at 117.

41.      On or about March 1, 2022, Debtor provided the State Court with "Supplemental Discovery Responses" that included several photographs and narratives of the alleged trips.  Id. at 117, Ex. P-1.

42.     At trial in this Adversary Action, no accounting of the $250,000.00 withdrawn from Debtor's bank accounts was produced other than the "Supplemental Discovery Responses" that was recently produced in connection with the contempt proceedings pending in the State Court Action.  Tr. at 97-99.


IV.     **DISCUSSION**

        The overriding purpose of the Bankruptcy Code is to permit honest debtors to reorder their financial affairs with their creditors and obtain a "fresh start," free from the weight of oppressive, preexisting debt.  In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995).  Exceptions to discharge are

---

[21]     Debtor made other numerous withdrawals which ranged in amount from $4,000.00 to $9,000.00. See Ex. SI-20.  Debtor testified that he spent these funds on his "bucket list" between May, 2012 and his first bankruptcy case filed in July, 2013.  Tr. at 98.

[22]     Debtor allegedly took trips to Las Vegas, Australia, the Caribbean, and other places.  Tr. at 115. During his Las Vegas trip, the Debtor claims he spent a total of $99,000.00, including $45,000.00 each night on 2 separate nights of entertainment.  Id. at 130-31; Ex. P-1.

12

strictly construed against creditors and liberally construed in favor of debtors.  Id.  Therefore, courts construe exceptions to discharge narrowly and strictly.  In re Sandoval, 541 F.3d 997, 1001 (10th Cir. 2008); In re Antonius, 358 B.R. 172, 181 (Bankr. E.D. Pa. 2006).  The burden of proving an exception to discharge is upon the creditor, who must establish entitlement to an exception by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 287-88 (1991).

The Plaintiff's Amended Complaint asserts claims under 11 U.S.C. §§ 523(a)(6), 727(a)(2), 727(a)(3), 727(a)(4) and 727(a)(5).  The Court will address Plaintiff's objections to Debtor's discharge first.

### A.  Objection to Discharge Under 11 U.S.C. § 727(a)[23]

Frequently, the Bankruptcy Code's purpose has been described as providing the honest but unfortunate debtor a fresh start.  See Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 367 (2007); Grogan, 498 U.S. at 286-87.  Obtaining a discharge in bankruptcy is a privilege, and not a right, and is thus reserved to honest debtors who deal fairly with the court and their creditors.  In re Spitko, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (quoting Matter of Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996)).  Indeed, as the Third Circuit Court of Appeals acknowledged, denial of discharge under § 727(a) is an "extreme step" and which is not to be taken lightly.  Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993).  Thus, objections to discharge under § 727 are liberally construed in favor of debtors.  Id.  Accordingly, a plaintiff has the burden of proving the objection by a preponderance of the evidence.  Fed. R. Bankr. P. 4005; Spitko, 357 B.R. at 298 (citing In re Adams, 31 F.3d 389, 393-94 (6th Cir. 1994)).

---

[23]     Solar mistakenly refers to Section "723" instead of "727" in each of the headings under Counts II-VI of its Amended Complaint.

Counts II through VI of the Amended Complaint seek to deny Debtor's discharge under §§727(a)(2), (3), (4), and (5). Based upon the above standards, the Court will review each of Solar's claims.

**1. 11 U.S.C. § 727(a)(2)**

Counts II and III of the Amended Complaint seek to deny Debtor's discharge under §727(a)(2), which provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> …
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> >
> > > (A) property of the debtor, within one year before the date of the filing of the petition; or
> > >
> > > (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

To prevail under § 727(a)(2)(A), Solar must establish three elements: "(1) a disposition of property, such as a transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay or defraud one or more creditors or the bankruptcy trustee through that disposition; and (3) that both the disposition and subjective intent occurred within the one-year period before the petition was filed." Spitko, 357 B.R. at 299. A claim under § 727(a)(2)(B) "is identical except that, rather than focusing on prepetition conduct, it requires proof that the debtor engaged in

14

misconduct with respect to property of the estate post-petition." In re Antonucci, 602 B.R. 618, 626–27 (Bankr. E.D. Pa. 2019).

Counts II and III do not differentiate which sub-part of § 727(a)(2) that Solar is asserting. However, from the averments, it appears that Count II relates to subsection (A) and Count III relates to subsection (B).

In Count II, Solar alleges that "[t]he Defendant/Debtor has actively concealed from this Court some or all of $334,741.72 in assets that he converted to cash in 2012-2013 by failing to disclose the assets in his Petitions, Schedules, testimony and Plans filed with this Court." Amended Complaint at ¶36. Although Solar has alleged that Debtor "still has a substantial portion of the cash hidden and available for his periodic use," id. at ¶41, there has been no concrete evidence offered to support this assertion. Further, there has been no direct evidence offered that any property of Debtor was "transferred" or "concealed" within one year of the petition date of this case. Accordingly, Solar has not met its burden under § 727(a)(2)(A).

As to Count III, Solar has shown that Debtor "transferred" or "concealed" property of the estate, after the date of the filing of the petition as follows:

1. Approximately two years after the filing of this Bankruptcy, Debtor inherited $2,600.00 following the death of his stepfather, which Debtor did not disclose. Tr. at 120.

2. Debtor also obtained a magistrate's judgment on March 26, 2019 against an individual for $4,206.05. Id. In satisfaction of the judgment, Debtor was paid $4,543.40 on or about May 15, 2019, which was not disclosed in his bankruptcy case. Ex. SI-25.

3. Debtor also received from his mother $25,000.00 prior to her death in an effort to help him out of his financial difficulties. Debtor claimed that the money was hidden in her house and she had instructed him where to find it. Tr. at 91. Debtor did not report these funds on his Schedules.

15

4. Debtor deposited these funds into his bank account in small increments during 2016-2018 to avoid detection. Tr. at 94, Ex. SI-21.

If taken separately, perhaps the non-disclosure of the $2,600.00 inheritance or the $4,543.40 judgment could be explained as being an "innocent-ignorance" by a debtor to report post-petition income/assets. However, here, Debtor has a 10-year pattern of concealing substantial assets from his creditors and this Court. There is a 10-year history of Solar actively litigating its rights against Debtor in State Court and in this Court. Accordingly, the Court finds there was a strong incentive for Debtor to conceal his assets.

Debtor has been represented by the same bankruptcy counsel since 2013. It is glaringly apparent that Debtor knew or should have known his responsibilities as a debtor in bankruptcy. The most damaging testimony is from Debtor himself where he states that he withdrew the funds that were allegedly "hidden" in the house by his mother prior to her death in small increments "because of this whole process, it just seemed I just put what I needed in there, and that's that." Tr. at 93-94 (quoting 7/10/18 Tr. at 59-60).

The Sixth Circuit recently summarized the Chapter 13 bankruptcy "process" and addressed a debtor's obligations while under the protections of Chapter 13 as follows:

> The Chapter 13 bankruptcy process requires a petitioner to propose a bankruptcy plan in good faith. 11 U.S.C. §§ 1321, 1322, 1325(a)(3). The bankruptcy trustee or holder of an allowed unsecured claim can object to the confirmation of a plan. 11 U.S.C. § 1325(b)(1). Bankruptcy court judges review the proposals, make a good-faith determination based on the totality of the circumstances, consider objections, and, if appropriate, confirm the plans. In re Barrett, 964 F.2d 588, 592 (6th Cir. 1992); 11 U.S.C. § 1325. As part of this process the debtor has an ongoing duty to disclose any potential claim as an asset to the bankruptcy court. White, 617 F.3d at 479 n.5 (quoting In re Coastal Plains, Inc., 179 F.3d 197, 207–08 (5th Cir. 1999)). Such a disclosure obligation

16

is "at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." Lewis, 141 F. App'x at 424 (quoting In re Colvin, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003)).

Stanley v. FCA US, LLC, 51 F.4th 215, 219-20 (6th Cir. 2022). Although Stanley related to non-disclosure of a personal injury claim and the Court disallowed the debtor from pursuing the claim based upon judicial estoppel grounds, the debtor's obligation and duty to disclose assets remains the same. See also In re Coastal Plains, Inc., 179 F.3d 197, 207-08 (5th Cir. 1999) ("Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. … The duty of disclosure in a bankruptcy proceeding is a continuing one").

Here, the Debtor testified that he engaged in a pattern of making smaller cash deposits into his bank account to avoid "this whole process" – meaning his bankruptcy case. It is clear from his prior testimony that he was intentionally depositing non-disclosed funds in small increments to evade detection by Solar and/or the bankruptcy "process." Further, when taken together with the withdrawal of over $250,000.00 in cash with virtually no receipts in the year prior to his first bankruptcy case, not disclosing the inheritance from his stepfather and not disclosing the payment of the judgment, there is more than a preponderance of evidence to warrant sustaining the objection to discharge under 11 U.S.C. § 727(a)(2)(B).

### 2. 11 U.S.C. § 727(a)(3)

Count IV of Plaintiff's Amended Complaint asserts a claim under 11 U.S.C. § 727(a)(3) which provides that the Court may deny a debtor a discharge when the debtor has

concealed, destroyed, mutilated, falsified, or failed to keep or
preserve any recorded information, including books, documents,

17

records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). Solar asserts that "spending over $330,000 in less than a year and a half" and "spending funds during the pendency of this proceeding" without retaining any records is "totally unjustifiable" and should prevent Debtor from obtaining a discharge in this case. Am. Compl. at ¶¶ 49-50. Given the facts of this case over the last 10 years, the Court agrees.

The function of § 727(a)(3) is to provide creditors and the Trustee with sufficient information about the debtor's financial affairs prior to the filing of the bankruptcy. In re Conde, 386 B.R. 577, 582 (Bankr. W.D. Pa. 2008) (citing Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3d Cir. 1992)). When applied to consumer debtors, a sudden and large dissipation of assets, coupled with a lack of books and records will generally provide a basis for denial of discharge under this section. PNC Bank, N.A. v. Buzzelli (In re Buzzelli), 246 B.R. 75, 98 (Bankr. W.D. Pa. 2000). To sustain an objection to a discharge under this section, the objecting party must show: (1) that the debtor failed to maintain and preserve adequate records and (2) this failure to maintain makes it impossible to ascertain the debtor's financial condition and material business transactions. Meridan Bank, 958 F.2d at 1232. A determination under § 727(a)(3) requires the court to look at all of the circumstances and evaluate everything on a "case-by-case basis." Conde, 386 B.R. at 582. The inquiry starts with what a reasonable person would do in similar circumstances. Meridian Bank, 958 F.2d at 1231. A court should look at the sophistication, education, and experience of the debtor. Id.

Section 727(a)(3) requires a debtor to produce records sufficient to provide creditors or a case trustee with "enough information" to determine the debtor's financial condition with

18

reasonable accuracy and completeness for a "reasonable period past to present." <u>In re Carmell</u>, 424 B.R. 401, 417 (Bankr. N.D. Ill. 2010) (citation omitted).  The statute places an affirmative duty on the debtor to maintain records accurately documenting his financial affairs. <u>Juzwiak</u>, 89 F.3d at 429.  Further, a debtor's records need not be perfect, but enough so that courts and creditors do not need to speculate as to the financial history of the debtor. <u>Carmel</u>, 424 B.R. at 417.

Overall, the Court finds Debtor's testimony in this proceeding lacked credibility[24] based upon the following:

1. Despite withdrawing over $250,000 in cash from his bank accounts between 2012-2013 in the year prior to his first bankruptcy filing, Debtor was unable to provide any documentation or receipts to verify the use of these funds.

2. Although Debtor testified that he resigned from Solar in 2011 due to his alleged health problems and had no intention of continuing to work, he had obtained a laptop from Acurlite and downloaded all of his files prior to resigning and immediately began employment with Solar's competitor Acurlite after he resigned.

3. Further, despite his alleged diagnosis, Debtor appeared at trial 10 years after his resignation with no apparent significant vision problems and testified that he still drives, watches television, reads, and occasionally rides his motorcycle.  Tr. at 129-30.

4. Approximately two years after the filing of this Bankruptcy case, Debtor inherited $2,600 following the death of his stepfather, which was not disclosed.  <u>Id.</u> at 120.

5. Debtor also obtained a magistrate's judgment on March 26, 2019 against an individual for $4,206.05 and payment of the judgment, which was not disclosed.  <u>Id.</u> at 120, Ex. SI-25.

---

[24]     As the trier of fact, this Court is in the best position to assess the credibility of any witness who testifies before it.  <u>Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.</u>, 57 F.3d 1215, 1223 (3d Cir. 1995) ("Furthermore, in reviewing the bankruptcy court's factual findings we are to give 'due regard' to the opportunity of that court to judge first-hand the credibility of witnesses.").

6. Debtor also did not disclose $25,000 his mother allegedly gave him prior to her death in an effort to help him out of his financial difficulties. This cash was hidden in her house according to the Debtor. Tr. at 91.

7. Debtor had previously testified that he deposited these funds into his bank account during 2016-2018 in small increments to avoid "this whole process" – meaning his Bankruptcy case. Id. at 93-94 (quoting from Transcript of July 2018 proceeding).

Taken as a whole, it is clear that Debtor embarked upon a plan of not only terminating his employment with Solar under false pretenses and causing damage to Solar's business, but he also dissipated, hid or concealed from his creditors and the Bankruptcy Court substantially all of his money and then, after his third bankruptcy filing, intentionally concealed his receipt of additional assets.

In support of its objection, Solar cites to In re Self, 325 B.R. 224 (Bankr. N.D. Ill. 2005). The debtor's conduct in Self can be compared to the Debtor here. In Self, the debtor won a $1,000,000 lottery prize to be paid in yearly payments of $50,000 for 20 years. Approximately 10 years in, the debtor chose to take a lump sum payment of $252,095.90. This was in direct breach of loan covenants the debtor had with a creditor. Two years later he filed a Chapter 7 bankruptcy. The creditor objected to his discharge. At trial the debtor was unable to substantiate the details regarding the dissipation of the funds and the Court sustained the creditor's objection.

In this case, the education and sophistication of the Debtor was not the subject of specific examination by either party at trial. However, the Court finds that the Debtor was responsible for highly technical manufacturing processes in connection with his job and appeared to be knowledgeable about his finances. As stated above, it is also important to re-emphasize that Debtor (i) withdrew almost all of his funds in the year prior to his first bankruptcy, and (ii) was intentionally depositing small increments of funds in his checking account from the cash his mother allegedly hid in her house, knowing that any larger transactions could be scrutinized by the

20

Bankruptcy "process." Given this background and the knowing and intentional conduct of Debtor, his failure to keep adequate records (or no records at all), allows this Court to find that there is more than a preponderance of evidence to warrant sustaining the objection to discharge under 11 U.S.C. § 727(a)(3).

### 3. 11 U.S.C. § 727(a)(4)

Count V of Plaintiff's Amended Complaint Plaintiff alleges a claim under § 727(a)(4). In order to prevail under (a)(4) the Plaintiff must show that

> (4)    the debtor knowingly and fraudulently, in or in connection with the case—
>
> > (A)    made a false oath or account;
> > (B)    presented or used a false claim;
> > (C)    gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> > (D)    withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

11 U.S.C. § 727(a)(4). In support of this claim, Plaintiff alleges that Debtor's failure to disclose assets and the outright misrepresentations contained in his papers filed in this Court (particularly the several Plans identifying a "loan" from his already deceased mother) as detailed above, constitute grounds for finding that his debts should be excepted from discharge under § 727(a)(4). The Court agrees.

As retired Judge France from this District found: "[t]o deny a discharge because the debtor made a false oath or account under Section 727(a)(4), a court must find that: (1) the debtor made a statement while under oath, (2) the statement was false, (3) the statement related materially to the bankruptcy case, (4) the debtor knew the statement was false, and (5) the debtor made the statement with fraudulent intent." In re Dizinno, 532 B.R. 231, 239 (Bankr. M.D. Pa. 2015)

(citing In re Olson, 916 F.2d 481, 484 (8th Cir. 1990)); accord In re Sowers, 229 B.R. 151, 158 (Bankr. N.D. Ohio 1998)). "The plaintiff may prove the requisite intent under § 727(a)(4) by circumstantial evidence or it may be inferred from a pattern of nondisclosure and concealment." In re Tzabari, 622 B.R. 332, 340–41 (Bankr. E.D. Pa. 2020) (citing In re Oakley, 503 B.R. 407, 426 (Bankr. E.D. Pa. 2013)).

As set forth above, Debtor's conduct since his first bankruptcy filing in 2013 exhibits a conscious effort to frustrate his primary creditor – Solar. From dissipating substantially all of his funds without any accounting in the year prior to the filing of the 2013 case, to the blatant misrepresentations contained in his schedules and the omissions in his schedules in this case, it is clear by a preponderance of the evidence that Debtor knowingly and fraudulently, in connection with this case, made (i) a false oath or account and (ii) received money without disclosure. In support of this finding, Debtor has admitted that he did not disclose the $25,000.00 his mother had allegedly hidden in her house for him prior to her death in his schedules that were filed under oath. In a "dizzying" colloquy between Debtor's Counsel and Judge Thomas during the 2018 confirmation hearing, Judge Thomas was trying to obtain an answer as to the facts relating to the money allegedly provided by Debtor's mother. 7/10/18 Tr. at 15-22.[25] Debtor's Counsel indicated that Debtor was in possession of at least $19,000.00 in cash from his mother prior to filing his petition that was not disclosed in his Schedules or in his SOFA. 7/10/18 Tr. at 15-22. Based upon

---

[25]     Although counsel for Debtor indicated it wasn't Debtor's cash at the time of the filing, id. at 21, since at a minimum he was in possession of this substantial amount of cash, it should have been reported on his SOFA, which was filed under oath. See Dkt. 21, Part 9.

this material non-disclosure, the Court finds that Plaintiff has met its burden and its objection to discharge under § 727(a)(4) is sustained.[26]

### 4. 11 U.S.C. § 727(a)(5)

Plaintiff's Amended Complaint at Count VI asserts an objection to discharge under § 727(a)(5) alleging that Debtor failed to (i) explain the "loss" of over $250,000 in the year prior to his first case, and (ii) the concealment of the funds Debtor received post-petition. Under § 727(a)(5), "[t]he court shall grant the debtor a discharge, unless ... (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." In re Kilroy, 354 B.R. 476, 498 (Bankr. S.D. Tex. 2006). To establish a case under § 727(a)(5), the creditor "must prove which assets are 'missing.'" Id. (citations omitted). Once the creditor establishes a case, "the burden then shifts to the debtors to provide a satisfactory explanation for that loss." Id. (citations omitted).

Here, Solar has asserted that Debtor has failed to explain satisfactorily the "loss or deficiency" of $250,000.00 in funds that were withdrawn in cash from his bank accounts in the year prior to his first bankruptcy case. Again, this is similar to the lottery winning debtor in Self, discussed supra. Although in Self the dissipation of assets was within the year prior to his case and the loss by Debtor here was 4 years prior to Debtor's 2016 case, the Self Court explained that "[t]he inquiry under § 727(a)(5) is not limited to events or transactions that have occurred within a specified number of months or years before the bankruptcy filing." Self, 325 B.R. at 250 (citing Buzzelli, 246 B.R. at 117); accord In re McDonald, 29 F.4th 817 (6th Cir. 2022) (utilizing five-year lookback); In re D'Agnese, 86 F.3d 732, 734 (7th Cir. 1996) (expanding focus to nine years

---

[26] The Court notes that the many Plans filed in this case containing the misrepresentation regarding a loan from the Debtor's deceased mother, were not filed under oath and, accordingly, would not fall under § 727(a)(4)(A).

23

pre-petition); In re Potts, 501 B.R. 711 (Bankr. D. Colo. 2013) (investigating transactions four to seven years pre-petition). The exact time a court should look back depends on the case; there is no hard and fast rule. Cohen v. Olbur (In re Olbur), 314 B.R. 732, 741 (Bankr. N.D. Ill. 2004).

In looking back at Debtor's conduct, the withdrawal of over $250,000.00 in cash from his bank accounts without any accounting establishes Solar's claim. For a period of almost 10 years now, Debtor has failed to account for those funds and failed to properly account and disclose the alleged cash his deceased mother left him. At trial, Debtor merely responded by stating he spent all the money on his "Bucket List." In his post-trial brief, Debtor argues that his production to the State Court of date-stamped pictures of certain vacation trips to avoid a contempt finding in 2022 should be sufficient to defeat Solar's objection. See Debtor's Brief at 21, Adv. Dkt. # 43. Although Debtor may have satisfied the State Court relating to a pending contempt proceeding, he does not satisfy his obligations under § 727(a)(5). As quoted by Debtor in his brief, "[t]he explanation must appear reasonable such that the court no longer wonders what happened to the assets." In re Swisher, 617 B.R. 826, 831 (Bankr. M.D. Pa. 2020) (citing In re Jacobs, 381 B.R. 147, 168 (Bankr. E.D. Pa. 2008) (citation omitted)). This Court still wonders what happened to the $250,000.00 and how much, if any, is left.[27] Debtor's testimony before this Court at trial and in other proceedings is not credible. Accordingly, Solar has met its burden and its objection to discharge under § 727(a)(5) is sustained.

### B. Non-dischargeability under 11 U.S.C. § 523(a)(6)

Although this Court has already sustained Solar's objections to discharge under § 727(a)(2)(B), (3), (4), and (5), the Court will briefly address Solar's Count I claim under 11 U.S.C.

---

[27] Debtor's Schedules and SOFAs filed in his Bankruptcy Cases all indicate $0.00 for income, so the Court also wonders how the Debtor has supported himself over the last 10 years.

§ 523(a)(6). Plaintiff alleges that the State Court Judgment in the amount of $1,182,361.31 against Debtor is nondischargeable, in whole or in part, because the conduct that resulted in the Judgment constituted a "willful and malicious injury" to Solar. In order to prevail under § 523(a)(6), Solar must show that the debt was "for willful and malicious injury by the debtor ...." The burden is on the creditor to prove the elements of the claim by a preponderance of the evidence. Grogan, 498 U.S. at 287–88.

My predecessor, Judge Robert N. Opel concisely stated how courts should interpret the requirement of "willful and malicious injury" as follows:

> In Kawaauhau v. Geiger, the Supreme Court discussed the meaning of "willful and malicious injury." 523 U.S. 57, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998). The Court noted that "[t]he section's word 'willful' modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely, [ ... ] a deliberate or intentional act that leads to injury." Id. at 61, 118 S. Ct. 974. The Third Circuit has explained that "[a]n injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." Conte v. Gautam, 33 F.3d 303, 305 (3d Cir. 1994). Courts have found that a willful injury can be established by indirect evidence of both the debtor's knowledge of the creditor's rights and the debtor's knowledge that the conduct will cause particularized harm. In re Glenn, 2012 WL 957492, *4 (Bankr. M.D. Pa. 2012) quoting In re Paul, 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001). The term "malicious", in nondischargeability proceedings, refers to "injuries that are wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." See In Re Nader, 2012 WL 1614856, *6 (Bankr. D.N.J. 2012) quoting In re Coley, 433 B.R. 476, 498 (Bankr. E.D. Pa. 2010).

In re Adalian, 474 B.R. 150, 162-63 (Bankr. M.D. Pa. 2012).

The phrase "willful and malicious" as used in § 523(a)(6) is narrowly defined. Nat'l Fertilizers, Ltd. v. Vepuri (In re Vepuri), 2009 WL 2921305, at *7 (Bankr. E.D. Pa. 2009) (citing

<u>Kawaauhau</u>, 523 U.S. at 63). A debtor's actions can only be "willful and malicious" under § 523(a)(6) "'if they either have a purpose of producing injury or have a substantial certainty of producing injury.'" <u>Id.</u> (quoting <u>In re Conte</u>, 33 F.3d 303, 307 (3d Cir. 1994)). Merely because a debtor's conduct may have had "'a *high probability* of producing harm ... does not establish that his conduct was *substantially certain* to produce [an] injury.'" <u>Harris v. Kamps (In re Kamps)</u>, 575 B.R. 62, 73 (Bankr. E.D. Pa. 2017) (quoting <u>Conte</u>, 33 F.3d at 309) (emphasis in original). A malicious injury requires (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. <u>Vepuri</u>, 2009 WL 2921305, at *8 (quoting <u>In re Barboza</u>, 545 F.3d 702, 706 (9th Cir. 2008)). A showing of specific malice is not required, and an injury can be malicious even in the absence of personal hatred, spite, or ill-will. <u>Kamps</u>, 575 B.R. at 73. However, in order to establish that an injury is malicious under § 523(a)(6), the aggrieved party must prove that the debtor's conduct was motivated by some purpose other than the maximization of the debtor's personal financial interests. <u>Sherwin Williams Co. v. Grasso (In re Grasso)</u>, 497 B.R. 434, 447 (Bankr. E.D. Pa. 2013) (citing <u>Jacobs</u>, 381 B.R. at 147).

In order to determine nondischargeability, the bankruptcy court must make the "fullest possible inquiry" into the underlying nature of the original debt. <u>Archer v. Warner</u>, 538 U.S. 314, 321 (2003). The court must look "into the true nature of the debt" to find out if it "aris[es] out of conduct specified in" a discharge exemption, regardless of the current form of the debt. <u>Brown v. Felsen</u>, 442 U.S. 127, 138 (1979).

Here, Solar asks the Court to find that (i) Debtor acted willfully and maliciously by, <u>inter alia</u>, leaving its employ under false pretenses, deleting technical information, working for a competitor and "sabotaging" Solar's designs, and (ii) that as a result, the underlying State Court Judgment (based upon an unopposed motion for summary judgment) should be sufficient to satisfy

its burden on dischargeability. The State Court Judgment is comprised of five groups of calculations (Ex. 4):

| | | | |
|---|---|---|---|
| I. | Wages and Benefits | $ | 57,290.37 |
| II | Compensation from Others | | 71,472.20 |
| III. | Sabotage damages | | 652,941.18 |
| IV. | Restoration Damages | | 3,562.50 |
| V. | Litigation Costs | | 397,095.06 |
| | Total | | $1,182,361.31 |

While it is clear that Debtor acted willfully to terminate his employment with Solar while at the same time he was concealing his relationship with his new employer, in looking at the underlying nature of the alleged debt, it is difficult to see how the "Wages and Benefits" and "Compensation from Others" categories can be considered "willful and malicious." As already found in this case by Judge Thomas:

> "[i]ntentional breaches of contract do not amount to willful and malicious injury. Lockerby v. Sierra, 535 F3d 1038 (9th Cir. 2008) ("Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to start afresh.") Id. at 1042.

In re Plevyak, 2018 WL 1686083, at *2 (Bankr. M.D. Pa. 2018). Accordingly, Solar did not satisfy its burden as to the "wages" and "compensation from others" claims.

The largest component of Solar's damage claim alleges that Debtor "sabotaged" its business production by providing a faulty design. Solar's principal did testify that a design by the Debtor did not work and, as a result, Solar lost business. But Solar did not offer any substantiating evidence that Debtor "willfully and maliciously" caused this loss.

The last component is for litigation costs.  Similar to the sabotage claim, the litigation costs are not directly related to Debtor's conduct in leaving Solar's employ.  Most of this claim relates to the State Court litigation that was focused on enforcing the non-compete and preventing Debtor from working at a competitor of Solar.

In order to prevail under § 523(a)(6), Solar was required to show that  Debtor "purposefully inflicted the injury or acted with substantial certainty that injury would result."  <u>Conte</u>, 33 F.3d at 305.  The Court finds that Solar has not established that Debtor's conduct was meant to deliberately, intentionally, or maliciously injure Solar.  Accordingly, Solar has not met its burden and its request to determine that the State Court Judgment is non-dischargeable under § 523(a)(6) is denied.


## V.  <u>CONCLUSION</u>

A bankruptcy judge should always strive to permit an honest but unfortunate debtor a fair opportunity to reorganize and to obtain a discharge of his or her personal obligations.  After three (3) separate bankruptcy cases, at least three (3) separate adversary actions, seven (7) proposed Plans that all failed while the case was in Chapter 13, failure to account for over $250,000 in cash withdrawn from his accounts prior to the filing of his first case and material misrepresentations and omissions discovered in his bankruptcy papers, this Court finds that Debtor is not an honest but unfortunate debtor.

Accordingly, for the reasons stated above, the Court (i) sustains Plaintiff Solar's Objections to Discharge under 11 U.S.C. §§ 727(a)(2)(B), 727(a)(3), 727(a)(4) and 727(a)(5), (ii) overrules the Objection to Discharge under 11 U.S.C. §727(a)(2)(A), and (iii) denies Plaintiff Solar's claim for a determination that the State Court Judgment is non-dischargeable under 11 U.S.C. § 523(a)(6).

An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: March 8, 2023